SLOVAK BARON EMPEY MURPHY & PINKNEY, LLP
Thomas S. Slovak (CASB# 62815)
John O. Pinkney (CASB# 162586)
Charles L. Gallagher (CASB# 167093)
1800 East Tahquitz Canyon Way
Palm Springs, California 92262
Tel: 760-322-2275
E-mail: sartain@sbemp.com
E-mail: pinkney@sbemp.com
E-mail: gallagher@sbemp.com

Attorneys for Plaintiff John P. Anderson, individually
and in his official capacity as a Sheriff of Madera County

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. ANDERSON, in his official capacity as the Sheriff of Madera County, and individually,<br><br>Plaintiff,<br><br>v.<br><br>JACK DURAN, JR., in his purported official capacity as Judge of the Picayune Rancheria of the Chukchansi Indians Tribal Court;<br>DONNA HOWARD, in her purported official capacity as Clerk of the Picayune Rancheria of the Chukchansi Indians Tribal Court;<br>THE PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, a federally recognized Indian Tribe;<br>CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY, a wholly owned unincorporated entity of the Picayune Rancheria of the Chukchansi Indians;<br>CHUKCHANSI INDIAN HOUSING AUTHORITY, a wholly owned unincorporated entity of the Picayune Rancheria of the Chukchansi Indians; | CASE NO.<br>[Action filed:_____<br>Case Assigned to:  Hon. _____<br>Dept: _____]<br><br>**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**(DEMAND FOR JURY TRIAL)** |

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

1

1   REGGIE LEWIS, in his purported official capacities    )
    as chairman of the Picayune Rancheria of the         )
2   Chukchansi Indians; a representative of the          )
    Chukchansi Economic Development Authority; and a     )
3   representative of the Chukchansi Indian Housing       )
    Authority;                                            )
4   CHANCE ALBERTA, in his purported official            )
5   capacities as vice chairman of the Picayune Rancheria )
    of the Chukchansi Indians; a representative of the   )
6   Chukchansi Economic Development Authority; and a     )
7   representative of the Chukchansi Indian Housing       )
    Authority;                                            )
8   CARL BUSHMAN, in his purported official capacities)
9   as a council member of the Picayune Rancheria of the )
    Chukchansi Indians; a representative of the          )
10  Chukchansi Economic Development Authority; and a     )
11  representative of the Chukchansi Indian Housing       )
    Authority;                                            )
12  IRENE WALTZ, in her purported official capacities as)
    a council member of  the Picayune Rancheria of the   )
13  Chukchansi Indians; a representative of the          )
    Chukchansi Economic Development Authority; and a     )
14  representative of the Chukchansi Indian Housing       )
    Authority;                                            )
15  LYNN CHENOT, in her purported official  capacities )
16  as a council member of the Picayune Rancheria of the )
    Chukchansi Indians; a representative of the          )
17  Chukchansi Economic Development Authority; and a     )
18  representative of the Chukchansi Indian Housing       )
    Authority;                                            )
19  DAVID CASTILLO, in his purported official            )
    capacities as a council member of  the Picayune      )
20  Rancheria of the Chukchansi Indians; a representative )
21  of the Chukchansi Economic Development Authority;    )
    and a representative of the Chukchansi Indian Housing )
22  Authority;  and                                       )
23  MELVIN ESPE, in his purported official capacities as )
    a council member of the Picayune Rancheria of the    )
24  Chukchansi  Indians, a representative of the          )
    Chukchansi Economic Development Authority; and a     )
25  representative of the Chukchansi Indian Housing       )
    Authority.                                            )
26                              Defendants.               )
                                                          )
27  _____)

28

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

**PLAINTIFF JOHN P. ANDERSON, IN HIS OFFICIAL CAPACITY AS THE SHERIFF OF MADERA COUNTY AND INDIVIDUALLY, ALLEGES:**

## I.

## INTRODUCTION

1.     This lawsuit stems from actions taken by individual members of the Picayune Rancheria of the Chukchansi Indians ("Tribe") who, without lawful or recognized authority, claim to be the authorized representatives of the Tribe; its wholly owned unincorporated, economic entity entitled Chukchansi Economic Development Authority ("CEDA"); and another separate, wholly owned unincorporated entity, entitled the Chukchansi Indian Housing Authority ("CIHA"). Specifically, Defendants Reggie Lewis, Chance Alberta, and Carl Bushman, Irene Waltz, Lynn Chenot, David Castillo, and Melvin Espe (hereinafter, these named Defendants are collectively referred to as the "individual Defendants or "Lewis Faction") have combined their efforts into what has been uniformly referred to as the Lewis Faction.  They have created a non-recognized "Tribal Court" ("Lewis Faction Tribunal"); appointed Defendant Jack P. Duran, Jr. ("Defendant Duran"), an attorney formerly with the law firm now representing the Lewis Faction, to be their "tribal judge" and Defendant Donna Howard ('Defendant Howard") as the clerk of court; caused their attorneys to draft and, on August 6, 2013, file in the Lewis Faction Tribunal in the name of the Tribe, CEDA and CIHA, a Verified Complaint for Declaratory and Injunctive Relief and Monetary Damages ("Lewis Faction Lawsuit") against the COUNTY OF MADERA ("County") BOARD OF SUPERVISORS ("County Supervisors"), Tribal members Nancy Ayala, Tracy Brechbuehl, Karen Wynn and Charles Sargosa  (commonly referred to collectively and herein as the "Ayala Faction" of the Tribe), and the Sheriff of Madera County, JOHN P. ANDERSON ("Plaintiff", 'Sheriff" or "Sheriff Anderson"),  in his official capacity and individually.  A copy of the Lewis Faction Lawsuit is attached hereto as **Exhibit "1"** and incorporated herein by reference as are all other exhibits referenced herein by this notation.

2.     On the same date that the Lewis Faction purportedly served the summons, complaint and notice of ex parte hearing according to the proofs of service filed in the Lewis Faction Lawsuit, Defendant Duran issued a Temporary Restraining Order ("TRO") which remains in effect.  Copies of

proofs of service filed by the Lewis Faction are attached hereto collectively as **Exhibit "2"** and incorporated herein.   The Lewis Faction attempted to serve Sheriff Anderson by delivering the summons, complaint and notice of ex parte hearing to the Madera County Counsel who did not have the authority to accept service on behalf of Sheriff Anderson.  Defendant Duran, therefore, issued the TRO without notice and an opportunity to be heard.  That TRO, a copy of which is attached hereto as **Exhibit "3"**, provides, in part, as follows:

> Notice shall not be required before this Order is entered because the Defendants may continue to make illegal attempts to seize control .of the Tribe's government, which attempts may include, but may not be limited to, the seizing of tribal bank accounts and the continued diversion, conversion, and loss of the Tribe's money and property if all Defendants are given advance notice of the Tribe's intention to obtain this Order.

> . . .

> IT IS HEREBY ORDERED that Defendants the Ayala Faction and Sheriff John Anderson, in his official capacity, their officers, agents, employees and attorneys and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, be and hereby are temporarily restrained directly or indirectly from taking any further illegal actions, that would cause permanent and irreparable harm to the Plaintiffs; and

> IT IS HEREBY FURTHER ORDERED that Sheriff John Anderson, in his official capacity, shall cease and desist from aiding and abetting the Ayala Factions' continual illegal activities by, but not limited to: granting access to the Ayala Faction to any Chukchansi government complex offices; failing to investigate the Ayala Factions' illegal activities including: its employment of known gang members as security personnel and for other purposes; the unlawful detention of Chukchansi Inc. employee Jared Conae; hoarding cash in the Casino's cage; the violence against the process servers on March 29, 2013, March 31, 2013, and April 21, 2013; failing to prevent Brechbuehl and Wynn from taking Tribal records from the government office complex on May 21, 2013, and July 26, 2013; failing to adequately investigate Hadley Hawkins' act of running down a Zak's Security employee with his vehicle on May 21, 2013; and failing to meet with, and update, the victims of the aforementioned crimes on the status of any investigations related to these criminal behaviors; and

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

4

IT IS HEREBY FURTHER ORDERED that Sheriff John Anderson, in his official capacity shall cease and desist from participating, facilitating, coordinating, negotiating, colluding, conspiring, or dealing in any manner whatsoever with Ayala and the Ayala Faction, through stipulations, agreements, communications, payments, or otherwise, as such actions are or would be in direct violation of Tribal law and are directed to abstain from moving, depleting, hiding, disposing of, or otherwise attempting to conceal assets from any future judgment that might be awarded against them for participating, facilitating, coordinating, negotiating, colluding, conspiring, or dealing in any manner whatsoever with Ayala and the Ayala Faction; and

IT IS HEREBY FURTHER ORDERED that Sheriff John Anderson, shall cease and desist contravening the Lewis Tribal Council's rightful authority by, but not limited to, threatening the Lewis Tribal Council with pepper spray, threatening Zak's Security employees with arrest for performing their duties; preventing the Lewis Tribal Council from accessing the Tribal government complex offices, shall cease and desist from permitting and endorsing Anderson's actions as his ultimate supervisor and authority responsible for his actions.

3.      The County Supervisors, each named in his official capacity, and Sheriff Anderson, named in his official capacity and individually, on August 10, 2013, specially appearing to contest jurisdiction only, promptly filed an FRCP 12(6)(1) & (2) Motion to Dismiss in the Lewis Faction Tribunal, contesting that body's jurisdiction over them. A copy of that Motion is attached hereto as **Exhibit "4."** That Motion as to the County Supervisors was sustained by Defendant Duran, but was denied as to Sheriff Anderson, both in his official capacity as Sheriff of Madera County and individually. Defendant Duran's ruling was issued on September 30, 2013, and included an order that Sheriff Anderson file his responsive pleading to the Lewis Faction Lawsuit no later than October 21, 2013. A copy of that Order is attached hereto as **Exhibit "5."** This action seeks to void and otherwise restrain any further attempts to enforce the TRO or similar orders, or to compel Sheriff Anderson to proceed in the Lewis Faction Tribunal, and seeks rulings related to these matters in dispute including an order requiring dismissal of such proceeding.

4.      Plaintiff's Verified Complaint for Declaratory and Injunctive Relief ("Complaint") has been brought against Defendant Duran in his capacity as presiding judge of the Lewis Faction Tribunal; Defendant Howard in her capacity as clerk of the Lewis Faction Tribunal; the Tribe;

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

CEDA; CIHA; the Lewis Faction in their official capacities as purported representatives of the Tribe, CEDA and CIHA. Plaintiff will serve this Complaint on all factions claiming to represent the Tribe, CEDA and CIHA including tribal members constituting the Ayala Faction and the Reid Faction, as described herein.

5.     Plaintiff asserts that injunctive and declaratory relief is necessary and proper to enjoin any efforts by Defendants to prosecute, direct, maintain, enforce or exercise jurisdiction over Sheriff Anderson in any tribal court, and most specifically, the Lewis Faction Tribunal presided over by Defendant Duran, inasmuch as there is no jurisdictional basis to assert the claims against Plaintiff as alleged in the Lewis Faction Tribal Lawsuit, or to issue the TRO or any other such orders or further orders as pled in the Lewis Tribal Lawsuit.   The Eleventh Amendment to the United States Constitution and cases interpreting same make clear that Sheriff Anderson is immune from suit as Sheriff of Madera County, as an agent of the state enforcing California's laws.  The TRO and the underlying Lewis Faction Tribunal Lawsuit are a patently absurd attempt by Defendants to essentially take over the office of Sheriff and/or act as his "Commander in Chief" subjecting Sheriff Anderson to tribal control and sanctions, if the overbroad, nonsensical, illegal directives of the TRO are violated.

6.     Compounding the illegitimacy of the Lewis Faction Lawsuit and the TRO issued by the Lewis Faction Tribunal, it is undisputed that there is an ongoing, unresolved, internal tribal dispute whereby at least three factions now claim to be "in control of" the Tribe, CEDA and CIHA.[1]

---

[1] The purported chairmen of the three competing factions, Nancy Ayala, Morris Reid and Defendant Lewis, have all filed declarations, in other federal courts, under penalty of perjury. The Declarations of Nancy Ayala ("Ayala Declaration"), dated June 26, 2013, Morris Reid ("Reid Declaration"), dated June 6, 2013, and Defendant Lewis ("Lewis Declaration"), dated September 9, 2013, are attached hereto as **Exhibits "7", "8"** and **"9"**.  In the attached declarations, Ayala, Reid and Defendant Lewis all claim, under penalty of perjury, to be the chairman of the Tribe.  Even though the Lewis Declaration was filed after the commencement of the Lewis Faction Lawsuit, Defendant Lewis makes no allegation regarding the involvement of the Sheriff in the current tribal dispute.  In fact, Defendant Lewis declares:

> 58. Ayala and members of her family, including but not limited to her cousin Ted Atkins ("Atkins"), the Director of Security at the Casino, had Casino security personnel, under the direction and control of Ayala and Atkins, illegally prevent the duly installed members of the Tribal Council from gaining access to

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

The dispute is described and further set forth in press releases from the competing factions attached hereto as **Exhibit "6"** attached hereto. Although the Lewis Faction claims to constitute the legitimate Tribal Council which created the Lewis Faction Tribunal and appointed Defendant Duran, it has not been recognized as the lawful authority of the entities on whose behalf it claims to operate. Similarly, the Lewis Faction Tribunal has not been recognized as a legitimate court by the Tribe and/or any Federal agency or court having jurisdiction or authority in this matter. The underlying proceedings before the Lewis Faction Tribunal are nothing more or less than a sham and self-serving construct unilaterally created by the Lewis Faction to create political support in their attempt to gain control over the Tribe, CEDA, CIHA and the Tribe's assets. Presently, the Lewis Faction operates out of rented office space in Fresno, California, and the Lewis Faction Tribunal apparently conducts hearings in the law offices of Defendant Duran and/or, presumably, at the Lewis Faction's office space in Fresno, California.

7.     Concurrently, other members of the Tribe (the Ayala Faction) continue to be in control of the Rancheria (or reservation), CEDA and its casino, the Chukchansi Gold Resort and Casino ("Casino"). Until recently, the Ayala Faction had been the representatives of the CIHA recognized by, and engaging in government-to-government business with, the U.S. Department of Housing and Urban Development ("HUD"); and continues to supervise a previously existing Tribal Court, located on the Rancheria, at the Tribal Government Compound, with another judicial officer, Robert Moeller, sitting as the Tribal Court Judge, and from which Defendant Duran has received no authorization or authority to proceed whatsoever. The Lewis Faction, to the extent purportedly acting on behalf of Defendants Tribe, CEDA and CIHA, Defendant Duran, and Defendant Howard have all acted in excess of their powers. Despite whatever political maneuvers underlie their

---

the Tribe's government buildings and barred them from the Tribe's reservation on February 21, 2013.

59.     That night, the Ayala Faction began to occupy not only the Tribal Government compound but also positions within the Casino with the assistance and support of her cousin, Director of Security Atkins, and his 100 person security staff. (Lewis Declaration.)

1  motives, such does not authorize or legitimize their improper attempt to exercise jurisdiction over

2  Sheriff Anderson.

3        8.      As alleged in detail herein, the Lewis Faction Tribunal, Defendant Duran and

4  Defendant Howard have no authority to proceed at all and there is no jurisdictional basis for any

5  Tribal Court, duly appointed or not, much less the Lewis Faction Tribunal, to render any rulings

6  against Sheriff Anderson as alleged in the underlying Lewis Faction Lawsuit.  Sheriff Anderson is

7  not a person against whom the Lewis Faction Lawsuit may be filed and/or the claims as alleged be

8  asserted.  In addition to the protections afforded by the Eleventh Amendment, Plaintiff is immune

9  from such claims and the present effort to assert the claims as alleged are nothing more or less than

10  an improper and failed attempt to bring in Tribal Court a federal civil rights action pursuant to 42

11  USC §1983. No tribe can bring such claims.  The claims alleged also violate Public Law 280 (18

12  U.S.C.A. Section 1162 and 28 U.S.C. §1360) ("Public Law 280"), the California Government

13  Claims Act (California Government Code Section 810, *et seq.*), and are contrary to California and

14  Federal laws shielding Sheriff Anderson from liability and which prohibit attempts to restrict his

15  authority under the law.  Defendants impermissibly seek tribal jurisdiction over Sheriff Anderson, a

16  non-tribal member, for conduct occurring "off reservation."

17        9.      Plaintiff asserts that the TRO now allegedly in effect, which the Defendants seek to

18  enforce and which Defendants will soon seek to convert to a preliminary injunction, albeit no

19  hearing date has yet been set, is unconstitutional and void as alleged below.

20        10.     Pursuant to agreements between (a) the County and the Tribe, and (b) CIHA, the

21  County and Sheriff Anderson , all ignored by Defendants, any claims, to the extent allowed, if at all,

22  must proceed in Federal Court or State Court, depending upon the agreement or matters at issue.

23  Simply stated, the Lewis Faction Tribunal has no power to restrain Sheriff Anderson from

24  performing his official duties that he is authorized and required by California law to perform. Such

25  orders also constitute constitutionally impermissible prior restraints of free speech and assembly by

26  Sheriff Anderson in both his official and individual capacities.

27        11.     Nothing by the facts or the law requires Plaintiff to continue to be exposed to the

28  proceedings or the orders of the Lewis Faction Tribunal, as brought by the Lewis Faction.  By this

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Complaint, Plaintiff seeks to restrain those proceedings and any further action against him in any Tribal Court, once established. Absent the relief requested, irreparable harm will result.

12.     Further "exhaustion of administrative remedies" before the Lewis Faction Tribunal is not required as the claims brought are clearly before a tribunal without any jurisdiction whatsoever over Plaintiff. They are also motivated by a desire to harass; are being conducted in bad faith as part of an ongoing intra-tribal dispute, not yet resolved; and are patently violative of express jurisdictional provisions in governing law and controlling agreements between the County, Sheriff Anderson, CIHA and the Tribe.  As alleged herein, there are numerous pending lawsuits and administrative hearings ongoing related to the determination of the authority of the Defendants and injunctive relief is necessary given the multiplicity of judicial proceedings.

13.     The existing TRO and the relief requested in the Lewis Faction Lawsuit are void as against public policy and cannot and should not be enforced as they seek to prevent the execution of a public statute by Sheriff Anderson as an officer of the law.  In summary, further exhaustion or litigation in the Lewis Faction Tribunal would be futile under the circumstances at issue.  There is no colorable claim of Tribal Court authority as there is no provision under the law that provides for any Tribal Court governance of Sheriff Anderson, whether in his official capacity or individually.

## II.

## PARTIES

14.     Plaintiff JOHN P. ANDERSON ("Sheriff Anderson") is an individual residing in the City of Madera, Madera County, California; a United States citizen; and is not now, and never has been, a member of the Tribe.  Sheriff Anderson is and, at all times herein mentioned, has been the duly elected Sheriff of Madera County and all actions at issue were taken in his official capacity as Sheriff of Madera County.  Plaintiff files this Verified Complaint for Declaratory and Injunctive Relief in his official capacity as the Sheriff of Madera County and as an individual.

15.     Defendant PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS ("Tribe") is a federally recognized tribe occupying land in Madera County, California, formally designated as a Rancheria albeit it is often incorrectly referred to as a "Reservation."

///

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

16.     Defendant JACK DURAN, Jr. ("Defendant Duran") is an individual and a Placer County Supervisor, a licensed California attorney, and is sued in his purported official capacity as a judge of Lewis Faction Tribunal established by one of the competing factions within the Tribe and which tribunal operates out of office space in Fresno leased by the Lewis Faction and/or Defendant Duran's office in Roseville, California ("Lewis Faction Tribunal").

17.     Defendant DONNA HOWARD ("Defendant Howard") is an individual who Plaintiff is informed is an employee of Defendant Duran, as a legal assistant for his law office, and who purports also to be the Clerk of the Lewis Faction Tribunal.

18.     Defendant CHUKCHANSI ECONOMIC DEVELOPMENT AUTHORITY ("CEDA") is a wholly owned unincorporated entity of the Tribe, which is located on the Rancheria immediately adjacent to the Casino on the Rancheria, located in Madera County, California.

19.     Defendant CHUKCHANSI INDIAN HOUSING AUTHORITY ("CIHA") is a wholly owned unincorporated entity of the Tribe and which has historically operated under the independent control and guidance of a Board of Directors duly appointed by the Tribe and which was, until recently, operating on non-Tribal land located within Madera County, near the Casino.

20.     Defendant REGGIE LEWIS ("Lewis") is sued in his capacity as the purported Chairman of the Tribe; a purported member of the CEDA Board; purported Chairman of the Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member, along with Defendants Alberta, Bushman, Waltz, Chenot, Castillo and Espe, of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in his representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

21.     Defendant CARL BUSHMAN ("Bushman"), a member of the Lewis Faction, in his capacity as Vice-Chairman of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in his representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

22.     Defendant CHANCE ALBERTA ("Alberta"), a member of the Lewis Faction, in his capacity as a member at large of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in his representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

23.     Defendant IRENE WALTZ ("Waltz"), a member of the Lewis Faction, in her capacity as a member at large of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in her representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

24.     Defendant LYNN CHENOT ("Chenot"), a member of the Lewis Faction, in her capacity as a member at large of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in her representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

25.     Defendant DAVID CASTILLO ("Castillo"), a member of the Lewis Faction, in his capacity as a member at large of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in his representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

26.     Defendant MELVYN ESPE ("Espe"), a member of the Lewis Faction, in his capacity as a member at large of the purported Tribal Council; as a purported CEDA Board member; a member of the purported Tribal Council that controls CIHA, as is alleged in the Lewis Faction Lawsuit; a purported member of the Lewis Faction which has created the Lewis Faction Tribunal

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

which, the Lewis Faction claims, is the duly empowered Tribal Court; as well as in his representative capacities, if any, for CEDA and CIHA as alleged in the Lewis Faction Lawsuit.

27.    Unless otherwise indicated, Defendants Tribe, CEDA, CIHA, Duran, Howard Alberta, Lewis, Bushman, Alberta, Waltz, Chenot, Castillo and Espe are collectively referred to herein as "Defendants".

### III.

### JURISDICTION AND VENUE

28.    The Lewis Faction Tribunal lacks jurisdiction over Sheriff Anderson in both his official and individual capacities. Pursuant to 28 USCA Section 1362, the District Courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States. (*Blatchford v. Native Village of Noatak*, 111 S CT 2578 (1991).)

29.    Sheriff Anderson has not been served with the Lewis Faction's complaint in his official or individual capacity. Federal Rule of Civil Procedure 4 governs the service of process in federal court. (*Brockmeyer v. May*, 383 F.3d 798, 800 (9th Cir.2004).) "Defendants must be served in accordance with [Rule 4], or there is no personal jurisdiction." (*Jackson v. Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) (footnote omitted).) "Neither actual notice, nor simply naming the person in the caption of the complaint, will subject defendants to personal jurisdiction if service was not made in substantial compliance with Rule 4." (*Id.* (citations omitted).) Once service is challenged, plaintiff bears the burden of establishing that service was valid under Rule 4. (*Brockmeyer*, 383 F.3d at 801.)

30.    To the extent the Lewis Faction Tribunal has any jurisdiction, it has exceeded that jurisdiction and violated federal constitutional rights and statutes. Federal Courts have authority to determine, as a matter arising under federal law (see 28 U.S.C. § 1331) whether a tribal court has exceeded the limits of its jurisdiction. (*County of Lewis v. All*, 163 F.3d 509 (1998); citing *Strate v. A-1 Contractors*, 520 U.S. 438; *National Farmers Union Ins. Cos. V. Crow Tribe*, 471 U.S. 845, 852-853 (1985).) Furthermore, inasmuch as the Rancheria is within Madera County, California, as

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Sheriff of Madera County, Sheriff Anderson is entitled to and does provide law enforcement services on the Rancheria as authorized by Public Law 280. Sheriff Anderson has consistently provided such services through the present, as well as exercising his lawful jurisdiction throughout Madera County which includes enforcing federal laws. In his capacity as Sheriff enforcing California's laws, Sheriff Anderson represents the State of California ("State") and is entitled to all Constitutional protections and immunities arising therefrom.    Sheriff Anderson is further entitled to due process and protections under the United States Constitution as an individual.

31.    In 2007, a Settlement Agreement ("2007 Settlement Agreement") was entered into between the Tribe and the County, a copy of which is attached hereto as **Exhibit "10"**.  The 2007 Settlement Agreement contains a dispute resolution provision which provides:

> 3.0 Enforcement of this Agreement/Limited Waiver of Sovereign Immunity:  Should a dispute arise as to the application, interpretation, and enforcement of the terms of this Agreement, the Parties agree to submit such dispute to mediation before a mutually agreed upon qualified mediator familiar with Indian Law. The Tribe agrees to a limited waiver of sovereign immunity for purposes of completion of such mediation.
> 3.0.1 Should mediation be impractical, unavailable, or unsuccessful by virtue of the time sensitivity or nature of the issues in dispute, the parties agree that questions of interpretation and enforcement of this agreement may be submitted to the United States District Court for the Northern District in the Tribal Action. . .

32.    Also in 2007, as a Memorandum of Understanding ("2007 MOU") was entered into between the County and the Tribe, a copy of which is attached hereto as **Exhibit "11"**.  In the 2007 MOU, the Tribe and the County acknowledged that "it is necessary and appropriate to enter into this new MOU, representing a new era in the government-to-government relationship between the Parties." Regardless of which tribal faction makes up today the "true Tribal Council members" and are the true representatives of CEDA and CIHA, all are bound to follow the 2007 MOU which expressly applies to the Tribe.  In Section 2.5 of the 2007 MOU, the Tribe acknowledges it is subject to Public Law 280, which fact would exist regardless of the admission in the 2007 MOU.

33.    Section 2.01 of the 2007 MOU contemplates that the Tribe will require law enforcement assistance from the Sheriff's Department from time to time.  Sheriff Anderson was an

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

13

intended third party beneficiary thereof as the elected official and ultimate policy maker regarding the matters at issue involving law enforcement assistance from the Sheriff's Department albeit nothing thereby could or did limit Sheriff Anderson's duties, obligations and /or authority as Sheriff for Madera County and California Law.

34.   Section 2.1 of the 2007 MOU states:

> The Tribe shall have the primary responsibility for maintaining order and safety within the boundaries of the Picayune Rancheria and on all lands held in trust by the United States for the benefit of the Tribe, but acknowledges that assistance from the Madera County Sheriff's Department ("MSO") may be required from time to time with respect to the apprehension and arrest of persons engaged in suspected criminal activity. The Tribe and MSO shall meet and confer on a regular basis to update the procedures which enable both entities to respect and assist each other in fulfilling their respective responsibilities as effectively and efficiently as possible.

35.   The 2007 MOU further provides in part that:

> 7.1     Should a dispute arise as to the application, interpretation, and enforcement of the terms of this MOU, the Parties agree to submit such dispute to mediation before a mutually agreed upon qualified mediator familiar with Indian Law.  The Tribe agrees to a limited waiver of sovereign immunity for purposes of completion of such mediation.

> 7.2     Should mediation be impractical, unavailable, or unsuccessful by virtue of the time sensitivity or nature of the issues in dispute, *the Parties agree that questions of interpretation and enforcement of this MOU shall be submitted to the United States District Court for the Northern District. (Emphasis Added.)*

> 7.3     The Tribe agrees to a limited waiver of sovereign immunity for the purposes of completion of mediation *and enforcement* as provided for at Section 3 of the Settlement Agreement and Stipulation to Jurisdiction agreed to by the Parties on February 14, 2007… *(Emphasis added.)*

> 8.2     The Parties have established a permanent committee, known as the Tribal/County Advisory Committee. *The responsibilities of the Committee include review of any questions related to the implementation of this MOU, and concerns over any matter within the scope of this MOU. (Emphasis Added.)*

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

14

1

8.2.1   The Committee is comprised of 2 members of the Madera County Board of Supervisors or their designees, and 2 members of the Tribal Council or their designees.

2

3   36.   The scope of the 2007 MOU includes "law enforcement" as set forth in Section 2.0.

4  The  scope of that Section specifically addresses the duties and obligations undertaken by the

5  Sheriff's Department and relates to the procedures regarding how "… both entities [are] to respect

6  and assist each other in fulfilling their *respective* responsibilities as effectively and efficiently as

7  possible."   While Plaintiff contests the right of Defendants to assert the claims as alleged against

8  Sheriff Anderson as being prohibited as alleged herein, to the extent Defendants assert questions of

9  interpretation and enforcement of the 2007 MOU, the Tribe has agreed they "shall be submitted to

10  the United States District Court for the Northern District."   Sheriff Anderson asserts he has standing

11  to assert such obligations on his own behalf and as a third party beneficiary of the 2007 MOU, albeit

12  nothing thereby could or did limit Plaintiff's authority and jurisdiction under California State Law.

13   37.   Plaintiff alleges that the claims of Defendants are void and that all orders existing or

14  future orders of the Lewis Factional Tribunal or any other tribunal of the Tribe are without force or

15  effect as no jurisdiction over Sheriff Anderson exists and such claims are barred by the Eleventh

16  Amendment to the United States Constitution. (*See Seminole Tribe v. Florida,* 517 U.S. 44 (1996);

17  *Idaho v. Couer d'Alene Tribe,* 521 U.S. 261 (1997).   Plaintiff alleges that Defendants have

18  exceeded their jurisdiction and violated federal, constitutional and statutory rights.

19   38.   The question of whether an Indian tribal court retains the power to compel non-

20  Indians to submit to civil jurisdiction in a tribal court for a personal injury action is one to be

21  answered by reference to federal law.   (*Nat'l Farmers Union Ins. Companies v. Crow Tribe of*

22  *Indians*, 471 U.S. 845 (1985).)   Therefore, an action for injunctive relief against a tribal court's

23  exercise of jurisdiction is one "arising under" federal law over which a federal district court has

24  jurisdiction. (*Id.*)

25   39.   Plaintiff alleges that some of the claims within the Lewis Faction Lawsuit appear to

26  be a veiled attempt to assert a prohibited claim under United States Code Title 42, § 1983 ("Section

27  1983") claim, albeit unsuccessfully.   Plaintiff alleges that no tribal court, much less the Lewis

28  Factional Tribunal, has jurisdiction over Section 1983 claims and that the Tribe, CEDA and CIHA

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

have no right to bring such claims in any forum.

40.  An actual case or controversy exists between the parties warranting this Court's declaratory and related relief pursuant to 28 U.S.C. §§ 2201 and 2202.  Jurisdiction is proper as Sheriff Anderson has been sued in the Lewis Faction Tribunal which purports to be, and holds itself out as, the Tribe's Court.  Said lawsuit is in retaliation for and to impair, impede, enjoin, restrain, influence and direct law enforcement activities of Sheriff Anderson, all in violation of Public Law 280.  Specifically, Defendants seek to interfere with and/or restrain Sheriff Anderson from providing law enforcement services on the Tribe's Rancheria in violation of Public Law 280, and throughout the County, and contrary to authority prohibiting same.  In addition, Defendants seek over $5 million in damages from Sheriff Anderson in retaliation for providing law enforcement services pursuant to the 2007 MOU and Public Law 280 and other actions taken by Plaintiff outside of Indian Country.

41.  Venue is proper under 28 U.S.C. § 1391 and the remedies and relief sought by Plaintiff are authorized under 28 U.S.C. §§ 2201 and 2202.

42.  On or about July 24, 2013, in order to allow CIHA necessary access to its own operational and historical files necessary to service CIHA's clients and to ensure its ability to operate, which ability had been compromised, and to avoid other impending damages, all as more particularly described below, CIHA on the one hand and the County and Sheriff Anderson on the other hand entered into an agreement entitled Chukchansi Indian Housing Authority Release and Limited Waiver of Sovereign Immunity ("CIHA Agreement"),  a copy of which is attached as **Exhibit "12"**.  The CIHA Agreement, in part, specifically excludes any attempt by Defendants as here occurring to address any matters involving that Agreement or its enforcement.   Specifically, the Governing Law/Venue found at Page 6, Section 13 provides:

> "*This Agreement shall be governed by and construed under the laws of the State of California.* The Parties hereby expressly and voluntarily submit to the jurisdiction of the Madera County Superior Court and waive all objections to personal or subject matter jurisdiction of, and venue in, the Madera County Superior Court or otherwise assigned, for the purposes of all cases and controversies involving this Agreement and its enforcement. The Parties agree and acknowledge that the Madera County Superior Court shall have

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

sole jurisdiction to enforce all terms and conditions of this Agreement to include enforcement of any orders or judgments entered by the Court. The Parties agree not to bring any action to enforce or interpret this Agreement in any tribunal or court other than the Madera County Superior Court." (*Emphasis Added.*)

43.     By the terms of the 2007 MOU, Defendants were required to mediate claims prior to bringing suit which Defendants have failed to do.  This operates as a bar to the Lewis Faction Lawsuit and is further evidence of Defendants' bad faith as further described and alleged below. Before filing this action, Sheriff Anderson did demand a mediation with the Tribe.  The Lewis Faction and their representatives did not attend the scheduled mediation.     Representatives of the Ayala and Reid Factions, each contending themselves to be the "true council" and representatives of the Tribe, CEDA and CIHA did attend in good faith and participate.

44.     By the Tribe's agreement under the 2007 MOU to submit to the jurisdiction of the United States District Court, Northern District and CIHA's agreement to be governed by the laws of the State of California and to submit to the jurisdiction of the Madera Superior Court, all procedural and substantive protections under United States and California law were afforded the parties thereto including Plaintiff.  Such included all United States and California Constitutional protections and all immunities and benefits under the law as herein alleged.  To the extent any action would proceed, complete due process of law including the right to jury trial would be afforded Sheriff Anderson, which right is denied to Sheriff Anderson in the Lewis Faction Tribunal proceedings or any Tribal Court proceedings of this Tribe.  The rights of Sheriff Anderson to both procedural and due process protections under United States and California law were thereby established which Defendants have no right to resist after the fact. The failure to provide same by reason of Defendants' attempt to assert jurisdiction over Sheriff Anderson  in the Lewis Faction Tribunal provides a jurisdictional basis for the claims and remedies of Plaintiff in this action.

45.     This Court has jurisdiction as Plaintiff alleges that the purported TRO and the Lewis Faction Lawsuit filed against him are unconstitutional on their face and as applied and further violate Sheriff Anderson's constitutional rights under the First, Seventh and Eleventh Amendments to United States Constitution, and Article 20, Section 3 of the California Constitution, as well as

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Article 1 Sections 2, 3, 15, and 7, of the California Constitution, as they unlawfully and without authority seek to restrain his actions, all without due process of law. Furthermore, the Lewis Faction Tribunal, through the actions of Defendant Duran as a judicial officer, is required to and is acting in violation of his sworn duties as a Supervisor of Placer County. The Lewis Faction Tribunal as constituted has no appeal process. According to the Tribal Court Ordinance of the Lewis Faction Tribunal, attached hereto as **Exhibit "13"** and incorporated herein by this reference, Sheriff Anderson has no right to appeal and no right to a jury trial by his peers in the Lewis Faction Tribunal and is, therefore, being denied his protections guaranteed to under the U.S. Constitution.

46. State sovereign immunity is addressed in the Eleventh Amendment to the U.S. Constitution, which provides:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State".

47. In light of sovereign immunity reserved to the states by the Eleventh Amendment, the Supreme Court has held that Tribes may not sue states without their consent. (*Blatchford v. Native Villages of Noatak and Circle Village*, 501 U.S. 775 (1991).)

48. Sheriff Anderson has absolute immunity from statements made in carrying out his duties as provided in California Civil Code Section 47(a).

49. Defendants failed to comply and freely admit their non-compliance with the California Tort Claims Act (California Government Code §§ 810, et seq.) prior to filing the Lewis Faction Lawsuit. Consequently, the Lewis Faction Lawsuit is defective and barred from proceeding. Furthermore, Defendants' claims are barred under the discretionary immunity doctrine as well as pursuant to the express immunities Sheriff Anderson to which he is entitled in exercising his discretion to conduct an investigation or make an arrest. (Cal. Gov. Code § 815). Government Code Section 815(a), specifically provides:

> Except as otherwise provided by statute: (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

18

The legislative committee comment following that section reads, in part:

> This section abolishes all common law or judicially declared forms of liability for public entities, except for such liability as may be required by the state or federal constitution, e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute ... is found declaring them to be liable.

50.    California Government Code Section 820.2 provides immunity to Sheriff Anderson as the acts complained of were the result of discretion exercised by Sheriff Anderson. Such immunity is absolute.

51.    Furthermore, Sheriff Anderson cannot be held liable for the acts complained of by Defendants.  California Government Code Section 846 provides:

> Neither a public entity nor a public employee is liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person in custody.

52.    Similarly, California Government Code Section 845 provides:

> Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise to provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service.

53.    California Government Code Section 900, et seq. set forth the requirements for bringing a claim of the type herein alleged, to whatever extent, if at all, any of the claims of Defendants can otherwise be brought.  Furthermore, the County has passed an Ordinance with respect to any claims to be brought against the County and/or Sheriff Anderson, a copy of which Ordinance is attached hereto as **Exhibit "14"**.  Defendants failed to comply with such claims procedure and, therefore, are barred as a matter of law to bring said claims.

54.    To the extent not already specifically alleged, Plaintiff asserts and claims all other immunities from liability or damages as allowed by law.

55.    Sheriff Anderson has exhausted his remedies as necessary by filing his Motion to Dismiss before the Lewis Faction Tribunal.  As alleged hereinabove, Plaintiff is entitled to the

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

relief requested herein and to otherwise be relieved of any threat of unlawful orders as now issued by the Lewis Faction Tribunal and specifically by Defendant Duran.

56.    The futility of proceeding before the Lewis Faction Tribunal and the bad faith conduct occurring with respect to proceedings before the Tribal leadership dispute is resolved, mandating no further action be held prior to relief being sought before this Court are reflected, inter alia, by the following:

a.    The manifest unconstitutionality, lack of authority and the directives of the TRO now issued demonstrate both the immediacy of the need for relief and the futility in further attempting to dissuade the Defendants from proceeding in their pursuit of Sheriff Anderson as occurring.

b.    Sheriff Anderson (and the County Supervisors prior to their dismissal) was not given proper notice prior to Defendants Duran and Howard issuing a TRO against Sheriff Anderson.  Moreover, Defendant Duran failed to disclose his association with the law firm (Rosette) appearing before him on behalf of the Lewis Faction and failed to disclose his representation of the Tribe and CEDA.

c.    Rosette holds itself out as legal counsel to the Tribe, CEDA and CIHA as do the law firms representing the Ayala Faction and the Reid Faction, as well as others.  Plaintiff herein is informed and believes that the Lewis Faction Tribunal Judge, Defendant Duran, may currently hold himself out as legal counsel to the Tribe.  (*See* **Exhibit "15"**, indicating Defendant Duran is the Tribe's legal counsel of record on trademark issues at same time holding himself out to be a tribal judge and also an associate of Rosette LLP.) Moreover, Defendant Duran is a sitting Supervisor for Placer County whose oath of office is set forth in the California Constitution conflicts with the oath of office taken by Defendant

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Duran in his capacity as Tribal Court judge.  Copies of the oaths of office take by California County Supervisors as set forth in the California Constitution, Article 20, Section 3, and Tribal Court judges as set forth in the Tribal Court Ordinance, Section 16, are attached respectively hereto as **Exhibits "16" and "17"**.

d.    As earlier referenced, Defendants have failed to submit their claims to mediation under the 2007 MOU or otherwise participate in a mediation that took place on August 18, 2013, under the guidance of mediator, Richard L. Gilbert, Judge Retired, even though representatives of the Ayala and Reid Factions did attend that mediation and counsel for the Lewis Faction had earlier stated they would attend such a mediation.

e.    The multiplicity of proceedings and lawsuits demonstrates that at least three (3) different Tribal factions within the Tribe each claim to be the *only* authority for Defendants, Tribe, CEDA and CIHA and each claims to be in power. On its face, the Lewis Faction Lawsuit along with its requested orders are a manifest device trying to be used by one such faction to assist said faction in its struggle to assert and/or gain power.   Neither this Court nor Plaintiff need be or should be subject to such abuses.  No cause exists to require Sheriff Anderson to continue further before the Lewis Faction Tribunal.  The Defendants have numerous other venues ongoing in which to play out and/or address their internal tribal disputes.

57.    Plaintiff does not now and never have consented to be subject to the jurisdiction of the Tribe or any Tribal Court, much less to a "Tribunal" established by one of several competing factions within the Tribe at a time when neither the Tribe nor the Federal government agree on the identity of the Tribe's leadership.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# IV.

## THE HISTORY OF THE PICAYUNE RANCHERIA AND

## RESULTING TRIBAL DISPUTES

**A.**    **Tribal Recognition.**

58.    The California Rancheria Act of 1958 ("Rancheria Act") terminated many Indian tribes, including the Tribe named as a Defendant herein. As a result of the Act, the tribes ceased to exist and members of the former tribes were stripped of their status as Indians. When the Tribe was terminated under the Rancheria Act, its former lands were distributed to two individuals, Maryan Ramirez ("Ramirez") and her brother, Gordon Wyatt ("Wyatt"). Wyatt died in 1966.

59.    In 1979, a class action lawsuit was filed in the United States District Court for the Northern District of California to challenge the termination of the trust relationship under the California Rancheria Act. (*Tillie Hardwick, et al. v. United States,* No. C-79-1710-SW (N.D. Cal. 1979).) *Hardwick* purportedly was filed on behalf of individual members of the former rancherias and 34 terminated rancherias, including the Picayune Rancheria of the Tribe.

60.    On December 27, 1983, the court ruled that judgment be entered in favor of certain *Hardwick* plaintiffs according to the terms of a stipulation for entry of judgment filed by the parties thereto, on August 2, 1983 ("1983 Stipulation"). The 1983 Stipulation identified the Picayune Rancheria as one of 17 rancherias subject to its provisions and restored the Indian status of the named plaintiffs and other class members of the 17 rancherias.

61.    According to an Order entered in *Hardwick*, attached hereto as **Exhibit "18"**, the Tribe did not take immediate action to organize its government after entry of the 1983 Stipulation. However, the Bureau of Indian Affairs ("BIA") began working with Ramirez to recognize the Tribe. Ramirez died in 1985 before the recognition had been completed. The BIA began working with Jane Lawhon ("Lawhon"), a descendant of Wyatt.

62.    Lawhon and other Wyatt descendants gained control of Tribal leadership and the Tribe adopted a Tribal Constitution on November 7, 1988.

63.    Beginning in 1989, the BIA recognized and worked with the Tribe's governing body and for approximately 20 years the Ramirez family never challenged the BIA's decision to certify

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

the Tribe's election.  Approximately twenty years after the BIA recognized the Wyatt leadership and Tribal elections, the Ramirez family unsuccessfully sought to unwind the recognized governance. The internal conflict continues to this day as the descendants of the Wyatt and Ramirez families and others continue in their struggle for control of the Tribe.

**B.      Approval of the Tribe's Gaming Compact.**

64.      On September 10, 1999, the Tribe entered into a Tribal-State Compact with the State of California related to gaming ("Compact").   The Compact is attached hereto as **Exhibit "19"**. The Tribe submitted the Compact to the National Indian Gaming Commission for review, which was approved in or about 2000.

**C.      The County and Tribe Settle Their Dispute and Enter Into the 2007 Settlement. Agreement and 2007 MOU.**

65.      The Tribe completed construction of its Casino in 2003.  The County re-assessed the value of the Picayune Rancheria ad valorem property tax liability and attempted to assess such taxes against the Tribe. The Tribe disputed the tax liability resulting in litigation in the U.S. District Court for the Northern District of California and the Madera County Superior Court.

66.      On July 31, 2007, all of the land comprising the original Picayune Rancheria was placed back into trust held by the United States.  The land now qualifies as "Indian land" pursuant to 25 U.S.C. §2703(4)(B).

67.      As earlier referenced, the Tribe and the County settled their dispute and then entered into the 2007 MOU.  Thereafter and through the present, Sheriff Anderson has acted in his official capacity and pursuant to other governing Federal and State laws, enforcing such laws during the period in which the matters at issue arose.

68.      Since the signing of the 2007 MOU, Sheriff Anderson has been called frequently by both the Ayala Faction and the Lewis Faction regarding allegations of hostilities, violence, threats of violence and criminal activity perpetrated by the competing factions.  Below are some examples of law enforcement services Sheriff Anderson has recently provided under the 2007 MOU, Public Law 280, and pursuant to his duties as the duly elected County Sheriff, as more fully set forth in the Declaration of Sheriff Anderson.

69.     On February 21, 2013, Sheriff Anderson was contacted regarding a disturbance at the Tribal Government Compound located on the Rancheria adjacent to the Casino.  Two Sheriff's deputies responded while two California Highway Patrol members stood by.   There were approximately fifteen (15) armed individuals present when the Sheriff's deputies arrived.  Sheriff Anderson was informed that there had been "a peaceful takeover" of the Tribal Council by the Ayala Faction.  Sheriff Anderson responded in an effort to keep the peace and prevent bloodshed. Sheriff Anderson did not favor or choose sides in the conflict.

70.     After the February 21, 2013 incident, the Ayala Faction, the Lewis Faction and the Reid Faction continued to hold themselves out as the legitimate and exclusive leadership of the Tribe.

71.     Beginning in December of 2011, there began a series of election issues and disputes which required Plaintiff's office to respond.  Several tribal councils were sworn into office and the intra-tribal conflicts increased and eventually another tribal election occurred on December 1, 2012. This tribal council, called "Tribal Council No. 3" in the Declaration of Sheriff Anderson, fractured into three (3) factions commonly referred to as the "Ayala Faction,"  the "Reid Faction" and the "Lewis Faction" reflecting the name of each group's leader and purported "Chairman of the Tribe."

72.     On or about February 24, 2013, the Lewis Faction demanded that Sheriff Anderson remove the Ayala Faction from the Tribal Government Compound.  Sheriff Anderson refused as it was not clear which party was entitled to possession of the Tribal buildings. It was also unclear under the 2007 MOU, whether Sheriff Anderson could, at the request of one group claiming to be the Tribal government, forcibly remove another group that also claimed to be the Tribal government from the Tribal Government Compound.

73.     On February 26, 2013, Sheriff Anderson learned that the Lewis Faction's armed security contractor, under orders from the Lewis Faction, was planning a forcible armed takeover of the Tribal Government Compound and that the Lewis Faction's armed security contractor was recruiting men from the surrounding community to join in the takeover operations.   Sheriff Anderson is informed and believes, and based thereon, alleges that the Lewis Faction caused its

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

hired armed security contractor to procure dump trucks, a helicopter and armed recruits to be used in the hostile takeover of the Tribal Government Compound by force or violence.

74.     The situation posed a serious and substantial risk of injury and/or death to those involved as well as to non-Indians.  Pursuant to the 2007 MOU and Public Law 280, and consistent with governing law and his authority (as were all of his actions at issue), Sheriff Anderson marshaled forces from his department, the California Department of Justice, the Fresno Police and Sheriff's Departments and Mariposa Sheriff's Department.  Sheriff Anderson's efforts deterred the threatened unlawful, armed and violent conflict, but at a cost of approximately $70,000 to the County and local taxpayers.

75.     On March 29, 2013, the Lewis Faction again sought Sheriff Anderson's assistance regarding a process server that the Lewis Faction hired to serve legal papers on Sargosa, an Ayala Faction member.  The process server alleged that Sargosa was armed with a "big barbecue knife" with a twelve inch blade. The process server alleged that Sargosa threatened him with the knife.

76.     The Sheriff's department investigated the alleged incident.  Sargosa informed a Sheriff's deputy that he had been using a folding hand saw to cut wood near his porch when the process server arrived.  Sargosa denied threatening the process server.  The deputy observed a folding hand saw at Sargosa's home, but did not see the type of knife described by the process server.

77.     Another incident alleged by members of the Lewis Faction occurred on April 21, 2013, when the Lewis Faction attempted to serve an Ayala Faction member, Brechbuehl, with court documents.  The Lewis Faction contacted the Sheriff's department seeking assistance and alleging that a male verbally threatened its process servers, chased after them and fired six gunshots.  In response to this report by the Lewis Faction, Sheriff's deputies and a detective investigated and determined that there were conflicting statements from the parties.  An independent witness stated he did hear three gunshots, but that the shotgun shots had been fired by a neighbor living up the hill.

78.     The Sheriff's department has received numerous complaints from Tribal members about the security company, Zak's Security, that has been hired by the Lewis Faction and which allegedly has been denominated by the Lewis Faction as "Tribal Police".  The complaints are that

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

these armed security forces while on the Rancheria and elsewhere dress in "storm trooper'" or "SWAT-like" uniforms with tactical vests, carry multiple firearms, including what have been described as "long guns" and side arms.  There have been claims that Zak Security forces acting at the direction of the Lewis Faction at times treat people in an intimidating and threatening manner.

79.     All of the incidents discussed above, including the violence and the requests of Tribal members, for both off and on Rancheria law enforcement assistance, have placed a strain on the County and Sheriff.

80.     Sheriff Anderson has had no guidance, aid or assistance from Federal agencies, law makers, or authorities despite repeatedly requesting such assistance.

81.     Without Federal assistance, the task of preventing bloodshed, homicide and armed conflict has fallen solely on Sheriff Anderson, with backup as needed from State and surrounding county officers.

## V.

## THE CIHA DISPUTE

82.     CIHA was formed for the primary purpose of participating in the Federal affordable housing programs offered by HUD.  CIHA's Ordinances and its Articles of Incorporation ("CIHA Ordinances") is attached hereto as **Exhibit "20"**.

83.     CIHA provides many types of housing assistance to low income Tribal members, including lease-to-own houses, low income rentals, housing and utility assistance grants and housing repairs.  CIHA has expended and requires additional funds for two major projects currently underway.  In one project, CIHA has acquired through the Federal Emergency Management Agency six housing units.  CIHA is currently in the process of preparing sites and foundations to install these housing units which will provide emergency and transitional housing for homeless Tribal members.   Plaintiff is informed and believes, and based thereon, alleges there are currently 29 homeless Tribal members on a waiting list to occupy these units.  In the other project, CIHA is purchasing two parcels of land for an 88-unit affordable housing rental development.  CIHA has already expended substantial sums performing environmental studies and applying for necessary zoning changes from the County.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

84.     Recipients of HUD's Indian Housing Block Grants, such as CIHA, access HUD funds through the electronic funds transfer system operated by the Office of Native American Programs called the Line of Credit Control System or LOCCS.

85.     Section 4.1 of the CIHA Ordinances state that the CIHA Board shall consist of five members who are enrolled members of the Tribe. Pursuant to Section 4.5 of the CIHA Ordinances, Commissioners serve for two year terms.

86.     Sections 2.8 and 4.2 of the CIHA Ordinances state that the powers of the CIHA Board include, but are not limited to, authority to "enter into agreements, contracts and memorandums of understanding with any Federal, state or local governmental agency or with any person, partnership, corporation or Indian Tribe as necessary to carry out the [CIHA's] duties and responsibilities set forth in this Ordinance."

87.     On or about October 1, 2012, CIHA, as Tenant, entered into a Rental Agreement ("Lease") with the Bradford D. Ditton Trust Dated December 2, 2004 ("Landlord") for office space located at 32011 Meadow Ridge Road, Coarsegold, California 93614 ("CIHA Building"). The CIHA Building is located approximately one mile from the Tribal Government Compound. However, the CIHA Building is located on private land and is not Tribal, Trust, or Rancheria land. A true and correct copy of the Lease is attached hereto as **Exhibit "21"**.

88.     CIHA occupied the CIHA Building serving its low income Tribal members and dispersing federal funds without incident until the Tribal governance dispute between the Tribal factions erupted. It operated without incident according to its Ordinances and Articles of Incorporation. There was no dispute as to who were the duly appointed members of CIHA's Board of Directors until recently, as will be discussed further below. All records necessary to service the intended beneficiaries of CIHA were kept in the CIHA Building and were necessary to effectuate the purpose of CIHA and to properly administer funds received from the Federal government and others.

89.     According to CIHA's Ordinances, CIHA is an entity separate from the Tribe and is governed by a five member Board of Commissioners ("Board"), appointed by the Tribe's Tribal Council. The CIHA Ordinances were adopted by Resolution No. 2012-48 on March 15, 2012. On

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    that same day, three of the five members of the Board (Helen Flores ("Flores"), Michael Wynn

2    ("Wynn") and Orianna Walker ("Walker") were appointed for two year terms ending on February

3    28, 2014, by Resolution No. 2012-50.  A true and correct copy of the Resolution No. 2012-50 is

4    attached hereto as **Exhibit "22"**.

5         90.    On April 22, 2013, in Resolution No. 2013-99, the Ayala Faction (consisting of a

6    quorum of the Tribal Council that had been elected at the December 1, 2012) appointed Cheryl

7    Aleman and David Jimenez to two year terms on CIHA Board, commencing on April 22, 2013, and

8    ending on February 23, 2015.  A true and correct copy of the Resolution No. 2013-99 is attached

9    hereto as **Exhibit "23"**.

10        91.    The Tribe, by adoption of Resolution No. 2012-50, signed by Defendant Lewis,  the

11   undisputed Chairman at that time, on March 15, 2012—well before the current Ayala Faction/Lewis

12   Faction/Reid Faction dispute—appointed Flores, Wynn and Walker to the CIHA Board, with terms

13   commencing on March 15, 2012 and ending on February 25, 2014.

14        92.    On May 21, 2013, members of the Lewis Faction and its armed "security" contractor

15   arrived at the CIHA building and attempted an armed takeover of CIHA's operations.  The Ayala

16   Factions's armed security force confronted the Lewis faction's armed representatives and security

17   contractors.  The Sheriff's deputies arrived at the CIHA building to prevent violence and armed

18   conflict.

19        93.    Because of the Tribal leadership dispute, it was initially unclear to Sheriff Anderson

20   which group should have access to the CIHA building.

21        94.    During the morning hours of May 21, 2013, the Sheriff's deputies met with the two

22   factions that were claiming the right to occupy the CIHA building--the Ayala Faction and the Lewis

23   Faction .  The Ayala Faction and the Lewis Faction voluntarily agreed that both factions would

24   leave the CIHA building vacant until it was determined who was entitled to occupy the building.

25        95.    Later on the day of  May 21, 2013, Ayala Faction members, who had most recently

26   occupied the CIHA building and had a key to the building, returned to the CIHA building and

27   removed personal items.   Consequently, the Lewis Faction's armed security forces and the Ayala

28   Faction's armed security faced off yet again.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

96.     As a result of the confrontation and in order to diffuse a tense and potentially violent situation, Sheriff Anderson requested that the CIHA building be vacated until such time that the issue of which group was entitled to occupy the CIHA building could be resolved.  Both sides agreed to refrain from entering the CIHA building and agreed that a Sheriff's deputy would remain on the premises until it could be determined which group was entitled to occupy the CIHA building.

97.     In order to maintain peace and order, a Sheriff's deputy was thereafter stationed at the CIHA building, twenty four hours a day, seven days a week, at a total cost to the County and local taxpayers of approximately $72,000.

98.     The Lewis Faction rented the vacant lot adjacent to the CIHA building and also stationed an armed security guard at the CIHA building, twenty four hours a day, seven days a week.

**A.     Letters from the BIA and HUD Confirm the Sitting Board of CIHA Had Authority as Did the Existing Tribal Council.**

99.     On May 16, 2013, the BIA formally recognized the Tribal Council that had been elected at the December 1, 2012 Tribal election which was the Tribal Council that existed prior to the current internal dispute ("BIA's May 16th Letter").  A true and correct copy of the BIA's May 16th Letter is attached hereto as **Exhibit "24"** and incorporated herein by this reference.  The December 1, 2012 Tribal Council included current competing faction leaders Ayala and Defendant Lewis.

100.     The BIA's May 16th Letter was in reply to an application submitted to by the Reid Faction to the BIA.  In the BIA's May 16th Letter, the BIA noted that there were several different people claiming to be representatives of the Tribe for the purpose of communicating with the BIA for government-to-government matters.  As stated above, the BIA's May 16th Letter states that the BIA *recognizes the individuals elected into office at the December 1, 2012, Tribal election as the governing body authorized to conduct government-to-government business*. The BIA, therefore, recognized the December 2012 Tribal Council as the lawful Tribal Council.

101.     HUD also addressed the issue of recognized Tribal leadership in a letter to Ayala, dated June 6, 2013 ("HUD's June 6th Letter").  This letter stated that HUD had deferred to the

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

BIA's determination and recognized the December 12, 2012 Tribal Council as the lawful Tribal Council, (the Ayala Faction controlled council, not the Lewis Faction). Furthermore HUD stated it would allow Ayala (and those in control of CIHA at the CIHA Building) access to LOCCS which is the vehicle for accessing HUD grant funds. A true and correct copy of HUD's June 6th Letter is attached hereto as **Exhibit "25"** which states, in part, as follows:

> After receiving correspondence from different groups regarding the make-up of the Tribe's Tribal Council, the Southwest Office of Native American Programs (SWONAP) in a letter dated May 30, 2013 requested additional information that verified who the recognized Tribal Council representatives for the Picayune Rancheria were. *It is HUD policy to defer to the Department of Interior, Bureau of Indian Affairs (BIA) on issues relating to the official recognition of a tribal government.* On June 3, 2013, you provided HUD with information demonstrating that the BIA continues to recognize you as the Tribal Chairperson. *At the present time, we are deferring to this determination by the BIA*...SWONAP remains concerned about the continued disagreements with other tribal members and intends to ensure that only authorized persons may access Chukchansi Indian Housing Authority's HUD funds (*emphasis added*).

102.     There is no dispute that as of June 6, 2013, the Indian housing authority that was recognized by HUD was, in fact, the CIHA operating under the Ayala Faction, as stated in HUD's June 6th Letter. Three members of the CIHA Board were Flores, Wynn and Walker, appointed prior to the leadership dispute, who had been engaging with HUD for the purpose of government-to-government business.

103.     Since the May 21, 2013 confrontation between the Ayala Faction and the Lewis Faction regarding occupancy of the CIHA Building, CIHA had not been able to access its files within the CIHA building that were necessary for the administration of CIHA's low income housing programs. Sheriff Anderson was informed by CIHA's independent counsel that if CIHA failed to comply with HUD requirements as a result of CIHA's inability to access the documents and computers within the CIHA building, CIHA and, more importantly, the Tribal members receiving HUD assistance would risk the loss of HUD funding as a result of noncompliance with HUD regulations.

///

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

104.     Sheriff Anderson came to be in receipt of the BIA's May 16th Letter and HUD's June 6th Letter and the Lease for the CIHA building which confirmed that it was CIHA, not the Tribe as such, that was entitled to the premises and property contained therein.  Based on the foregoing, Sheriff Anderson could not prevent the CIHA Board recognized by HUD and Southwest Office of Native American Programs ("SWONAP") at that time from accessing CIHA's own documents and computers held within the CIHA building.  Sheriff Anderson had no legal authority to override or reject the determination of HUD which was based upon the determination of the BIA.

105.     Attorney David Rapport, counsel to the CIHA recognized by HUD at the time, sent Sheriff Anderson a letter, dated July 18, 2013, describing the dire consequences that could result because of CIHA's inability to access its files ("Rapport's July 18th Letter").  A true and correct copy of Rapport's July 18th Letter is attached hereto as **Exhibit "26"** and incorporated herein by this reference.  According to Rapport's July 18th Letter:

> CIHA and its current staff are drawing down and using HUD funds, pursuant to the June 6 decision by Carolyn J. O'Neil, Administrator of the Southwest Office of Native American Programs, to continue the administration of the Tribe's housing program and to comply with the extensive federal regulations governing the use of those funds. . . The Interim CIHA Executive Director informs me that lack of access to CIHA's files remaining on the leased premises disrupts its ability to administer the Tribe's low income housing program and places it in a situation of potentially breaching the applicable Federal requirements CIHA is charged with maintaining and protecting confidential, personal and financial documents of Tribal members which are used to evaluate and monitor grant funding requirements. Currently, CIHA has 27 homes that it manages using NAHASDA Grants. The files are predominantly tenant files containing the signed original lease agreements, tenant background investigations, historical records, current contracts, ongoing work orders and all other records pertaining to each house and each tenant. *Without access to these files CIHA cannot enforce leases, collect and recover rent, document each tenant's income eligibility under NHASADA and perform many other functions essential to the Tribe's housing program. This is a precarious position for the CIHA to be placed in with the potential of commiting (sic) breaches of policies, grants and Federal guidelines.*

Slovak Baron Empey Murphy & Pinksey LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Additionally, several large projects are currently being developed with critical deadlines. One such project is a $6 Million development that is being placed at risk. August 6th is the public hearing on this project and will be followed by closing escrow and futher (sic) negotiations. *As deadlines approach, CIHA is deprived of access to orignal (sic) contracts, studies, plans and specifications for structures, along with other vital information necessary to continue this project.*

At the present time, the CIHA is undergoing the annual audit required by NAHASDA. Computer files and procurement processes conducted on various projects along with historical records required for and used in ongoing projects are inaccessible. *The CIHA is compelled to operate without the supporting documents essential for the audit or guidance of significant and necessary banking records, historical accounts receivable, accounts payable, and bank reconciliation records, again risking a breach of grants, policies and hindering CIHA's ability to respond to audit questions.*

*CIHA must have access to operational and historic files immediately. Without these files current projects will fail and the rental houses along with the tenants (sic) eligibility will continue to suffer and place the Tribe at risk of losing grant funding or incuring (sic) audit findings.* (Emphasis added.)

106.    As earlier referenced in Paragraph 42 above, on July 24, 2013, CIHA on one hand and the County and Sheriff Anderson on the other hand, entered into the CIHA Agreement. The CIHA Agreement confirms that CIHA is legal entity created by the Tribe that is governed by and independent Board.   The Board in control of CIHA at the time of the agreement was earlier established before the disputes arising over control of the Tribe between the Ayala Faction and the Lewis Faction.  It confirmed the authority of CIHA to enter into the CIHA Agreement with Sheriff Anderson and the County.  Paragraph 13 of the CIHA Agreement includes an acknowledgment that the sole jurisdiction for CIHA to enforce the CIHA Agreement or to interpret it rests solely with the Madera County Superior Court, and not the Lewis Faction Tribunal or any other Tribal Court of the Tribe.  Plaintiff alleges that portions of the Lewis Faction Lawsuit effectively challenge and attempt to avoid and bring actions contrary to the express terms of the CIHA Agreement by which all Defendants are bound.

///

///

107.     The Indian housing authority that had been recognized by HUD removed its personal property from the CIHA building on July 26, 2013 and delivered it to the Tribal Government Compound without violence or breach of the peace.  Immediately thereafter, the Sheriff's deputies that had been assigned to the CIHA building resumed their customary duty of providing law enforcement services in other County areas.

108.     After the HUD- and BIA-recognized Indian housing authority had removed its personal property from the CIHA building on July 26, 2013, HUD sent a letter addressed to Phil Bush, a consultant retained by the Ayala-led CIHA, dated July 29, 2013 ("HUD's July 29th Letter"). A true and correct copy of HUD's July 29th Letter is attached hereto as **Exhibit "27"** and incorporated herein by this reference.   In HUD's July 29th Letter, HUD states:

> [SWONAP] is providing you this letter as a courtesy to confirm, per your request, that the SWONAP still has a work relationship/partnership with the Chukchansi Indian Housing Authority (CIHA), of Coarsegold, CA, in the administration of the Native American Housing Assistance and Self Determination Act (NAHASDA). *The SWONAP works directly with Acting Executive Director Don Citbor; Bookkeeper Kerry Donaldson; and CIHA Board of Commissioners Chairperson Michael Wynn.* (*Emphasis added.*)

109.     According to HUD's July 29th Letter, HUD reaffirmed its recognition of the CIHA Board of which Wynn was the chair and, at a minimum, Flores and Walker were members—this was HUD's determination and not the determination of either the County or Sheriff Anderson.  Because there was a CIHA Board recognized by HUD at the time, Sheriff Anderson had no lawful basis to deny this recognized body access to the CIHA building.

110.     Nearly one (1) month after the HUD-recognized CIHA had removed its personal property from the CIHA building and HUD's July 29th Letter confirming the Ayala-led CIHA was the proper entity for purposes of government-to-government business with HUD, HUD sent a letter to Don Citbor, Executive Director of the Ayala-led CIHA, dated August 22, 2013.  A true and correct copy of HUD's August 22nd Letter is attached hereto as **Exhibit "28"** and incorporated herein by this reference.   According to HUD's August 22nd Letter, HUD stated that it had recently been notified that the determination set forth in the BIA Letter, dated May 16, 2013...

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

is currently being appealed at the BIA.   Because this appeal is still pending, the BIA informed us that, *in accordance with 25 C.F.R. § 2.6, there is no BIA decision regarding the recognition of the Tribal government that is currently in effect.*

Thus, *until a final determination is made by the BIA, the make-up of the Tribal government of the Picayune Rancheria of Chukchansi Indians remains uncertain.* HUD is particularly concerned about the conflicting information that HUD has received from different factions regarding the membership of the Board of Commissioners of CIHA. This conflicting information is a direct result of the dispute that is ongoing at the Tribal government level. HUD must have assurances that a BIA-recognized Tribal government exists, and that it has lawfully appointed the Board of Commissioners for CIHA. Moreover, HUD must ensure that all users approved to access LOCCS under an approved Form HUD-27054 are in fact authorized and properly designated by a recognized official of the tribe or CIHA.

To ensure that the tribe's [Indian Housing Block Grant ("IHBG")] funds are accessed only by authorized individuals, all current LOCCS users are hereby prohibited from accessing LOCCS.  HUD is revoking its approval of all previously approved HUD-27054 forms submitted on behalf of CIHA. (*Emphasis added.*)

111.   Based on HUD's August 22nd Letter, the BIA and HUD have recently changed their positions and are no longer recognizing any Tribal Council or CIHA Board.  Plaintiff alleges that this confirms that Defendants, and each of them, have no authority to either file the Lewis Faction Lawsuit or to otherwise proceed in the Lewis Faction Tribunal as is occurring and will continue to occur absent rulings by this Court.

112.   On September 4, 2013, the BIA sent a letter to Defendant Lewis, dated September 4, 2013 ("BIA's September 4[th] Letter").  A true and correct copy of BIA's September 4th Letter is attached hereto as **Exhibit "29"** and incorporated herein by this reference.  According to the BIA's September 4th Letter, the BIA indicated that because of the appeal filed in regards to the BIA's May 16th Letter, the BIA is not permitted to engage with any of the factions, including the Lewis Faction, for the purpose of government-to-government business.  The BIA is not recognizing any government of the Tribe.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

34

# VI.

## RECENT AND RELATED LITIGATION AND PENDING ADMINISTRATIVE APPEALS

### A.    "Tribal Court" Litigation.

113.    During the current Tribal leadership dispute, the Ayala Faction has been operating its own Ayala Faction Tribunal or Court and the Lewis Faction has been operating its own Lewis Faction Tribunal or Court.   Although the Reid Faction also claims to be the Tribal government, it is not believed that the Reid Faction is operating its own Faction Tribunal at this time.

114.    The Ayala Faction has filed lawsuits addressing the status of the Lewis Faction and others in the Ayala Faction Tribunal.   The Lewis Faction has filed lawsuits against the Ayala Faction and others in the Lewis Faction Tribunal.   Aside from the Lewis Faction Lawsuit at issue here, which names Ayala, Brechbuehl, K. Wynn, and Sargosa, in addition to Sheriff Anderson and now dismissed County Supervisors, there is another lawsuit filed by the Ayala Faction.   Attached hereto are the Temporary Restraining Order, entered on March 15, 2013 ("March 15th TRO"), and the Preliminary Injunction, entered on March 29, 2013 ("March 29th Injunction"), by the Ayala Faction Tribunal in the Rabobank Case.   The March 15th TRO and March 29th Injunction are attached hereto respectively as **Exhibits "30"** and **"31"**.   On March 29, 2013, Judge Moller, in the Preliminary Injunction, found that the Ayala Faction represented a quorum of the undisputed Tribal Council that had been elected on December 12, 2012, and thus, was the lawful Tribal Council.

### B.    The U.S. National Indian Gaming Commission Action Pending in the District of Columbia.

115.    On March 29, 2013, the Reid Faction, in the name of the Tribe, filed an action against the U.S. National Indian Gaming Commission in the U.S. District Court for the District of Columbia   (1:13-cv-00411-RWR) ("Gaming Commission Case").   In the Gaming Commission Case, the Reid Faction alleges that the Reid Faction, consisting of Reid, "Dora Jones, Dixie Hammond and Harold Hammond, Jr. comprise the voting majority of the Tribe's seven-member governing body, its Tribal Council."   A copy of the amended complaint filed in the Gaming Commission Case is attached hereto as **Exhibit "32"**.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

116.    According to the Reid Faction, the U.S. Gaming Commission had improperly engaged in government-to-government relations with the Lewis Faction regarding the Casino, which the Reid Faction alleged, was "not the duly-elected and legitimate governing body of the Tribe."

117.    The Reid Faction is seeking "orders from the Court declaring invalid and setting aside the Commission's actions concerning [the Reid Faction's] Gaming Ordinance amendments and its actions recognizing the Lewis Group."

**C.    The Wells Fargo Action pending in the Supreme Court of the State of New York.**

118.    On June 18, 2013, Wells Fargo Bank, N.A. filed an action against the "Chukchansi Tribe", several entities of the Tribe, Rabobank, Global Cash Network, and Ayala, Brechbuehl, Wynn, Sargosa, Lewis, Alberta, Bushman, and Bank of America, N.A. in the Supreme Court of the State of New York (Index No. 652140/2013) ("Wells Fargo Case").  A copy of the complaint filed in the Wells Fargo Case is attached hereto as **Exhibit "33"**.  The Wells Fargo Case arises out of the Tribe's alleged failure to make interest payments to the holders of $250 million in secured notes because of the Tribal leadership dispute.   According to the Complaint in the Wells Fargo Case, in the Security Agreement entered into by the Tribe's entity known as CEDA, CEDA consented to the jurisdiction of the Supreme Court of the State of New York.  According to the Wells Fargo Case, the CEDA Board of Directors is made of the members of the Tribal Council.  In other words, the CEDA Board membership mirrors the Tribal Council membership.

119.    In the Wells Fargo Case, the Ayala Faction has made an appearance and claims to be the CEDA Board while at the same time the Lewis Faction has made an appearance and claims to be the CEDA Board.  The New York court has yet to make any determination on this issue, but apparently all parties, excluding the Reid Faction, have submitted this issue and concede jurisdiction of the New York court to consider this issue.

120.    On July 19, 2013, the Lewis Faction filed a Cross-Claim against the Ayala Faction in the Wells Fargo Case, requesting, among other things, that the Supreme Court of the State of New York declare that the CEDA Board is comprised of Reggie Lewis, Chairman; Carl "Bushman, Vice

Slovak Baron Empey Murphy & Pinksey LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Chairman; Irene Waltz, Secretary; Chance Alberta, Treasurer; David Castillo, Member-at-Large; Lynn Chenot, Member-at-Large; and Melvin Epse, Member-at-Large. That case remains pending.

**D.  Yosemite Bank Action in the Northern District of California**

121.  On May 30, 2013, the Tribe, as represented by the Ayala Faction, commenced a lawsuit in the U.S. District Court for the Northern District of California against Yosemite Bank, United Security Bank, Lewis, as Tribal Council Vice-Chairperson, Alberta, as Tribal Council Member-at-Large, and Bushman, as Tribal Council Member-at-Large (1:13-cv-00831-LJO-MJS) ("Yosemite Bank Case").

122.  According to paragraph 2 of the March 29th Injunction by the Ayala Faction Tribunal:

> The Court declares that the governing body of the Chukchansi Tribe is the seven member Tribal Council consisting of Nancy Ayala, Chair; Reggie Lewis, Vice Chair; Tracey Brechbuehl, Secretary; Karen Wynn, Treasurer; Charles Sargosa, Council Member at Large, Chance Alberta, Council Member at Large, and Carl Bushman, Council Member at Large. Pursuant to Article VI, Section 2, of the Constitution, the Tribal Council can only conduct business where a quorum of four members of the Tribal Council is present. In light of the dispute between the group of Tribal Council members consisting of Ayala, Brechbuehl, Wynn and Sargosa ("Ayala Group") and the group of Tribal Council members consisting of defendants Lewis, Alberta, and Bushman ("Lewis Group"), the Court declares that, because *only the Ayala Group can establish a quorum of the Tribal Council, the Ayala Group constitutes the current Tribal Council authorized to act as the lawful governing body of the Chukchansi Tribe.* (Emphasis added.)

123.  The Lewis Faction and the Reid Faction had both filed Motions to intervene in the Yosemite Bank Case. A voluntary dismissal without prejudice was filed on September 12, 2013.

**E.  Matthew Olin / CEDA Action in the Madera County Superior Court**

124.  CEDA is the entity that holds title to and operates the Casino of the Tribe. After the Ayala Faction and Lewis Faction fracture, the Ayala Faction continued to control CEDA, and operate the Casino, and claimed to be the lawful tribal authority. CEDA, for reasons unknown to Plaintiff, terminated the services of Matthew Olin ("Olin"), the General Manager of the Casino, who apparently had a management contract with CEDA which he claimed was breached thereby. The Lewis Faction, without notice or participation by the Ayala Faction entered into a Stipulation

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

for Entry of Judgment in favor of Olin, in the sum of $725,000, in the matter entitled *Matthew Olin v. Chukchansi Economic Development Authority* (Madera County Superior Court, Case No. MCV062912). A copy of the Stipulation for Entry of Judgment and Judgment pursuant to Stipulation are attached respectively hereto as **Exhibits "34"** and **"35"**.

125. Counsel for Olin then caused to be issued a Writ of Execution whereby Sheriff Anderson is directed to enforce the Judgment by levying on the assets of CEDA. A copy of the Writ of Execution is attached hereto as **Exhibit "36"**. This Writ of Execution was served upon Sheriff Anderson on or about June 6, 2013 with instructions to levy. The instructions are to seize revenues generated by the Casino; that is, a "till tap" has been requested.

126. The Ayala Faction, contending it to be the lawful representative of CEDA, never agreed to such a Judgment or Writ of Execution, has now filed a Notice of Motion and Motion to Vacate the Stipulated Judgment, or in the alternative, Motion to Quash Summons, or in the alternative, Motion to Dismiss Action, and an Order thereon ("Motion to Quash"), and Memorandum of Points and Authorities filed in support of the Motion to Vacate the Stipulated Judgment ("Points and Authorities"). The Motion to Quash and Points and Authorities, attached respectively hereto as **Exhibits "37"** and **"38"**, were purportedly filed by "the true Chukchansi Economic Development Authority ("CEDA") for the Picayune Rancheria of Chukchansi Indians, and more specifically CEDA Board members Nancy Ayala, Tracey Brechbuehl, Charles Sargosa and Karen Wynn ("Tribal Quorum")." The Points and Authorities outline in detail the matters at issue and the effect upon Sheriff Anderson. In the Points and Authorities, at Page 3, Line 6, it is alleged, "Currently, there is a dispute over who constitutes the Board of Directors for CEDA."

127. The Writ of Execution in Olin is at odds with the Lewis Faction Tribunal's TRO. The TRO obtained by the Lewis Faction "on behalf of" CEDA apparently objects to Sheriff Anderson carrying out his duties as Sheriff regarding Tribal assets, which would include executing on CEDA's money at the Casino pursuant to Olin's Writ now served on Sheriff Anderson.

///

///

///

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

**F.     Effect of Related Litigation and Proceedings.**

128.    The combined effect of these lawsuits and proceedings demonstrates unquestionably that there is no recognized tribal authority presently in control of the Tribe; that there is no basis or authority for the Lewis Faction Lawsuit to be filed and/or the Lewis Faction Tribunal to issue any orders against Sheriff Anderson, and that Defendants herein should be ordered to cease and desist in all such legal proceedings against Sheriff Anderson.

**VII.**

**FIRST CLAIM FOR RELIEF**

**(Declaratory Relief against All Defendants)**

129.    Plaintiff re-alleges and incorporates by reference paragraphs 1-128 above.

130.    An actual controversy has arisen and now exists relating to the respective rights, duties and obligations of the parties herein with respect to the events and agreements hereinabove alleged.  Plaintiff contends as follows:

(a)     Pursuant to *28 U.S.C. Sections 2201 and 2202* Plaintiff is entitled to a declaratory judgment on the terms and conditions herein alleged;

(b)     This Court  has jurisdiction over the subject matter of this case pursuant to *28 U.S.C. Section 1331* because the Complaint herein raises issues under Federal Law including, but not limited to, claims arising under the Eleventh, First, Sixth, and Fourteenth Amendments to the United States Constitution as well as Public Law 280;

(c)     They claims set forth in the Lewis Faction Lawsuit before the Lewis Faction Tribunal are without force or effect and are otherwise void;

(d)     No tribal court of the Tribe including, but not limited to, the Lewis Faction Tribunal has jurisdiction over Plaintiff and there is not even a colorable claim of jurisdiction existing in the case before this Court;

(e)     It is beyond the power of any Tribe or its related entities including, but not limited to, a tribal court including the Lewis Faction Tribunal to regulate,

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

39

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

direct, limit or restrict Plaintiff in any way in the performance of his duties as Sheriff of Madera County;

(f)    The TRO of Defendant Duran and all requested relief of Defendants is void and unenforceable as it impermissibly divests and infringes on the powers of Plaintiff as Sheriff and abrogated and delegates duties solely within his purview in violation of both Federal and California State law;

(g)    Plaintiff is entitled to all governmental protections and immunities provided under California law including but not limited to those afforded him under Civil Code Section 47(A) and Government Code Sections 810 et seq. 815, 820.2, 845, 846 and 900 et seq.;

(h)    No basis exists for this Court to refrain from granting Plaintiff's requested relief and overwhelming evidence exists the relief requested by Plaintiff is merited and that the TRO must be vacated and orders issued dismissing the Lewis Faction Lawsuit immediately;

(i)    The TRO obtained by Defendants and any requested relief therefrom or thereafter as requested in the Lewis Faction Lawsuit poses an imminent and irreparable threat to public safety and would otherwise compel Plaintiff to unlawfully perform his duties or refrain from performing his duties under the control of a tribal court judge;

(j)    Plaintiff has no adequate remedy at law and irreparable harm will result in the absence of the relief being granted as requested by Plaintiff;

(k)    No just cause exists to require this Court to refrain from issuing its rulings or to subject any longer the Plaintiff to proceeding before the Lewis Faction Tribunal, whether or not it is now or in the future will be recognized as the tribal court of the Tribe which it cannot demonstrate it is at the present time and thus cannot be said to have any authority to do anything on behalf of the Tribe much less issue orders as has Defendant Duran, to date;

(l)     By reason of the manner in which Defendants have proceeded to date and by reason of the terms of the TRO and the relief requested, Defendants are acting in bad faith as herein above alleged;

(m)     Defendants were required to seek any relief under the 2007 MOU applicable to law enforcement issues which are included within the claims of Defendants as alleged in the Lewis Faction Lawsuit and that failure provides a further basis to conclude a tribal court including the Lewis Faction Tribunal was without jurisdiction to proceed in the manner occurring and Plaintiff herein as Sheriff of Madera County impacted by such 2007 MOU is entitled to the benefits thereof and the jurisdictional submission of the Tribe to this Court's jurisdiction regarding matters relating thereto;

(n)     With respect to the claims of CIHA, Defendants also must abide by same and cannot bring any claims in tribal court as occurring having agreed to proceed in California State Court;

(o)     Plaintiff is entitled to recover his reasonable attorneys' fees and costs in connection with this litigation including but not limited to recovery of all fees and costs incurred in bringing his unsuccessful motion to dismiss before the Lewis Faction Tribunal; and

(p)     Any and all declarations necessary and appropriate to adjudicate the matters arising under the facts of this case.

131.    Defendants, and each of them, contend the opposite with respect to all of Plaintiff's contentions as set forth herein and deny the right or necessity of Plaintiff to obtain the requested rulings and relief sought herein.

132.    By this Complaint, Plaintiff likewise seeks an Order from this Court enjoining the Lewis Faction Tribunal from proceeding to hear the claims being asserted against them by Defendants and further enjoining all of Defendants from, directly or indirectly, continuing to prosecute and/or assist in the prosecution those claims.

133.    Pursuant to *28 U.S.C. §§ 2201 and 2202*, Plaintiff is entitled to a declaratory

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

41

judgment confirming its contentions as alleged above and declaring void and unenforceable the TRO issued by Defendant Duran and providing a basis also to order the Lewis Faction Lawsuit dismissed and/or without force or effect.

## VIII.

### SECOND CLAIM FOR RELIEF

(Prohibitory Injunction — Prohibiting Defendants from
Exercising Jurisdiction over Sheriff Anderson)

134.    Plaintiff re-alleges and incorporates by reference paragraphs 1-132 above.

135.    Plaintiff is informed and believes and thereon alleges based on the verified allegations set forth herein, in addition to any verified supporting declarations and evidence hereinafter filed, Plaintiff is entitled to a temporary restraining order, preliminary and permanent injunction pursuant to FRCP 65 and Local Rules 7-10 and 65.  Plaintiff is informed and believes and thereon alleges that by reason of the unlawful acts and attempts to restrain and direct the duties of Plaintiff without jurisdiction and in violation of constitutional standards and State and Federal law and by reason of the requested relief set forth in the Lewis Faction Lawsuit and the TRO issued by Defendant Duran, Defendants, and each of them, will continue to unlawfully seek to direct and unlawful restrain Plaintiff in his duties as Sheriff of Madera County.

136.    Because of the actions and orders of the Lewis Faction Tribunal, including its issued TRO, and by reason of the pending lawsuit in the Lewis Faction Tribunal against Sheriff Anderson all in violation of both Federal and State law as hereinabove alleged, Plaintiff will suffer and incur immediate and irreparable harm including but not limited to being subject to unlawful orders; being ordered to undertake duties and refrain from undertaking duties contrary to his oath of office as Sheriff of Madera County and in violation of his constitutional rights and obligations under the United States and California Constitutions.  Further, such orders and threatened orders seek to usurp the power of the State of California and to direct Sheriff in violation of both Federal and State law. The existence of such TRO and the alleged and stated authority of the Lewis Faction Tribunal holds itself out as a lawful authority to the public and places Defendants in their representative capacities in the ostensible position of having authority to proceed in accordance with the TRO now in effect.

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Further harm is described and outlined in the sworn declaration of Plaintiff the allegations of which are incorporated herein by this reference. If Defendants herein are not immediately restrained and enjoined, (a) they will substantially and irreparably impair and impede Sheriff Anderson from fulfilling his lawful duties and will, in particular, impair Sheriff Anderson's maintaining law and order within his jurisdiction, and (b) they will interfere with and obstruct justice within Sheriff Anderson's jurisdiction.

137. The TRO of Defendant Duran and the purported right to exercise jurisdiction over Plaintiff, undermines the lawful authority of Plaintiff as Sheriff and undermines his reputation and ability to carry out his law enforcement duties both within Madera County, both on and off the Rancheria. The results of such damage result in incalculable but real harm to Plaintiff and to the State of California for which he is obligated to perform duties and enforce laws now blatantly and openly challenged by a "tribunal" purportedly operating under tribal law and thereby seeking to control and bind Plaintiff to laws and standards which have no applicability to Plaintiff and seek to order Plaintiff to answer to personnel who have no authority over him and who actually are subject to Plaintiff's jurisdiction about which they object or otherwise seek to thwart.

138. Sheriff Anderson will be irreparably harmed in that Defendants have and will continue to violate Sheriff Anderson's rights to due process, as Defendants have already demonstrated by entry of the Lewis Faction Tribunal TRO against Sheriff Anderson without proper notice or opportunity to appear. The Lewis Faction has made demand on Sheriff Anderson for $5 million in the Lewis Faction Lawsuit in a case in which the Lewis Faction Tribunal is not a legitimate or recognized court and clearly lacks subject matter jurisdiction, thereby risking an adverse judgment or other action in the Lewis Faction Tribunal for which Sheriff Anderson would incur substantial inconvenience and expense to appear and defend themselves. Moreover, Defendants seek to avoid submission to the jurisdiction of this Court as mandated by the 2007 MOU and by reason of the CIHA Agreement herein described. By such avoidance, Plaintiff is deprived of his constitutional rights, to due process under United States and California standards, not tribal standards which are limited and not co-extensive and denial of a right to a trial by jury and a right to appeal, none of which exists under the standards and laws unlawfully sought by

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

43

Defendants to be imposed upon Plaintiff.

139.    Plaintiff seeks hereby to prevent the above-described irreparable harm from occurring which will result absent this Court's issuance of the requested relief including a temporary restraining order, preliminary injunction and permanent injunction as requested by Plaintiff hereby.

140.    A balancing of the relevant hardships favors the entry of a temporary restraining order and preliminary and permanent injunctive relief against Defendants, and such relief would serve the public interest.

141.    The Lewis Faction Tribunal, through Defendant Duran, and Defendant Howard, and their successors, should be preliminarily and permanently enjoined from adjudicating the Lewis Faction Lawsuit and from taking any action to further the prosecution of Sheriff Anderson in the Lewis Faction Lawsuit and any other civil litigation in the Lewis Faction Tribunal adverse to Plaintiff.

142.    Any actions by Defendants to exercise any authority on the basis of the Lewis Faction Tribunal jurisdiction will cause Sheriff Anderson to suffer irreparable harm for which there is no adequate remedy at law.

143.    Plaintiff is entitled to both temporary and permanent injunctions prohibiting Defendants from taking any actions as to Plaintiff in the Lewis Faction Lawsuit or any other civil litigation in the Lewis Faction Tribunal as set forth in its Proposed Order Granting Application for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue to include the following:

A.    Defendants, and each of them, are ordered that, pending an order by this Court as to whether a preliminary injunction should issue, Defendants, their officers, agents, servants, employees, and attorneys, and all persons acting by, through, under, or in concert with Defendants (referred to collectively hereinafter as "Defendants") are enjoined from proceeding with the action currently pending before Defendant Duran and filed by the Lewis Faction against John P. Anderson in his individual and official capacity as the

Slovak Baron Empey Murphy & Pinksey LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

44

Madera County Sheriff.  Defendants shall not conduct any further tribal court hearings against the Plaintiff herein in which Madera County, the Madera County Sheriff or their employees, officers, officials, elected or appointed board members, agents or attorneys are named in any manner as Defendants or real parties in interest.  Defendants shall not entertain, order, issue, enforce or attempt to enforce any order, judgment ruling or decree of any kind against Plaintiff or his employees, officers, officials, elected or appointed board members, agents or attorneys.

B.  The TRO issued against Plaintiff Anderson by Defendant Duran on or about August 6, 2013, is void and of no effect.  Said TRO shall not be served upon Plaintiff Anderson and enforced.  Sheriff Anderson is ordered not to comply with any orders of Defendant Duran, the Lewis Faction Tribunal or any tribal court without further order of this Court.

C.  Defendants are to immediately vacate the TRO issued against Plaintiff and that it is hereby held to be unenforceable.

D.  Within five business days from the date of this order, Defendants Duran and Howard shall serve and file a declaration verifying that they have complied with this order and detailing what steps, if any, they have taken to do so.

144.  Plaintiff also alleges that he is entitled to a preliminary injunction and permanent injunction on the same terms and conditions as alleged above.

## IX.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks relief and judgment against the Defendants, as follows:

A.  For a declaratory judgment that the Tribe, CEDA, CIHA, the Lewis Faction Tribunal, and Defendants Duran, Howard, Lewis, Alberta, Bushman, Waltz, Chenot, Castillo, and Espe have no jurisdiction over Plaintiff in the Lewis Faction Tribunal or in any tribal court of the Tribe with respect to the claims and matters as alleged in the Lewis Faction Lawsuit.

///

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

B.     For a declaratory judgment that all orders of Defendant Duran including the TRO issued in the Lewis Faction Lawsuit are without force or effect and otherwise issued without jurisdiction and are void.

C.     For such other and further declaratory judgments consistent with the contentions and allegations of Plaintiff as set forth in his Complaint and as are otherwise necessary and consistent therewith.

D.     For a temporary restraining order and preliminary and ultimately a permanent injunction providing that Defendants, their officers, agents, servants, employees, and attorneys, and all persons acting by, through, under, or in concert with Defendants (referred to collectively hereinafter as "Defendants") are enjoined from proceeding with the action currently pending before Defendant Duran and filed by the Lewis Faction against Sheriff Anderson in his individual and official capacity as the Madera County Sheriff.  Defendants shall not conduct any further tribal court hearings against the Plaintiff herein in which the County, the Sheriff or their employees, officers, officials, elected or appointed board members, agents or attorneys are named in any manner as Defendants or real parties in interest.  Defendants shall not entertain, order, issue, enforce or attempt to enforce any order, judgment ruling or decree of any kind against Plaintiff or his employees, officers, officials, elected or appointed board members, agents or attorneys.

E.     The TRO issued against Plaintiff Anderson by Defendant Duran on or about August 6, 2013, is void and of no effect.  Said TRO shall not be served upon Plaintiff Anderson and enforced.  Sheriff Anderson is ordered not to comply with any orders of Defendant Duran, the Lewis Faction Tribunal or any tribal court without further order of this Court.

F.     Defendants are to immediately vacate the TRO issued against Plaintiff and that it is hereby held to be unenforceable.

G.     Within five business days from the date of this order, Defendants Duran and Howard shall serve and file a declaration verifying that they have complied with this order and detailing what steps, if any, they have taken to do so

H.     For such other and further relief as the Court deems just and proper.

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## X.

## JURY DEMAND

Plaintiff requests a jury trial on all issues triable to a jury in this matter.

DATED this 16th day of October, 2013.

SLOVAK BARON EMPEY MURPHY & PINNKEY, LLP

By: _Thomas R. Sartain_

1800 East Tahquitz Canyon Way
Palm Springs, CA 92262
Tel: 760-322-2275
E-mail: sartain@sbemp.com
Attorneys for Plaintiff John P. Anderson, individually
and in his official capacity as a Sheriff of Madera County

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## VERIFICATION

I, John P. Anderson declare as follows:

1.      I am the Sheriff of Madera County.

2.      I have personal knowledge of the facts set forth in the forgoing Complaint  and if called upon to testify I would competently testify as to the matters stated herein.

3.      I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint is true and correct.


Executed on October ⁄⁄ ⁄⁄ ⁄ 2013.

JOHN P. ANDERSON,
Madera County Sheriff

Slovak Baron Empey Murphy & Pinkney LLP
1800 East Tahquitz Canyon Way
Palm Springs, CA 92262

VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF